UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James River Insurance Company,

       Plaintiff,

  v.                             **MEMORANDUM OPINION AND ORDER**
                                    Civil No. 14-3434 ADM/LIB

The Interlachen Propertyowners
Association and Kuepers Construction, Inc.,

       Defendants.

_____

Paulette S. Sarp, Esq., Hinshaw & Culbertson LLP, Minneapolis, MN, on behalf of Plaintiff.

Lauris A. Heyerdahl, Esq., Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, MN, on behalf of Defendants.
_____

## I. INTRODUCTION

On March 9, 2016, the undersigned United States District Judge heard oral argument on Plaintiff James River Insurance Company's ("James River") Motion for Summary Judgment [Docket No. 65] and Defendants The Interlachen Propertyowners Association (the "Association") and Kuepers Construction, Inc.'s ("Kuepers") (collectively, "Defendants") Motion for Partial Summary Judgment [Docket No. 71].  For the reasons set forth below, James River's motion is granted and Defendants' motion is denied.

## II. BACKGROUND

James River seeks a ruling that a Miller-Shugart settlement agreement[1] and stipulated judgment entered into by its insured Kuepers and the Association in an underlying construction

---

[1] In Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982), the Minnesota Supreme Court upheld a settlement agreement where an insured stipulated to a money judgment in favor of a plaintiff and, in return, the plaintiff released the insured from personal liability and agreed to seek recovery only from the insurer.

defect lawsuit is unenforceable as a matter of law.

## A. Underlying State Court Action

Between 1997 and 2001, Kuepers constructed a townhome project in Crow Wing County, Minnesota on real property owned by the Association. Dougherty Aff. [Docket No. 69] Ex. 1 ¶ 1. In November 2011, the Association sued Kuepers and other corporate and individual parties in Crow Wing County District Court, asserting claims arising from the construction of the townhome project (the "Construction Defect Claims"). Id. Kuepers tendered defense to its insurer, State Auto Insurance Company ("State Auto"), who retained as counsel Cousineau McGuire Chartered. Kuepers Decl. [Docket No. 76] ¶ 1. Later, the Association amended its Complaint to assert claims for professional engineering negligence and professional design negligence (the "Design Defect Claims"). Compl. [Docket No. 1] Ex. A. Kuepers tendered defense of the Design Defect Claims to James River, who agreed to defend Kuepers subject to a reservation of rights. Kuepers Decl. ¶ 3. James River engaged the law firm of Murnane Brandt to defend Kuepers. Id. ¶ 3.

## B. James River's Policy

Between December 1, 2004 and December 1, 2014, James River provided professional liability coverage to Kuepers under a claims-made-and-reported Architects and Engineers Professional Liability Insurance Policy. Because the claim arose and was reported to James River in 2011, the 2011–2012 policy was triggered. Dougherty Aff. Ex. 7 (the "Policy"). The Policy provides a limit of $1,000,000 per claim, and the payment of "claim expenses" reduces the available limit of liability. Id.

The Policy insures Kuepers against a "'Wrongful Act' in the performance of or failure to

perform 'Professional Services.'" Id. § I(1)(a).  Relevant to this case is the Policy's definition of "Claims Expenses," which provides that James River will pay:

> reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "Claim", including the cost of appeal bonds, however, we shall not be obligated to apply for or furnish appeal bonds on your behalf.

Id. § II(C)(2).

> The Policy also includes a cooperation clause, which states:
>
> You shall cooperate with us and provide us with all information and assistance which we reasonably request including without limitation attending hearings, depositions and trials and assisting in effecting settlements, securing and giving evidence and conducting the defense of any "Claim" covered by this Policy.  You shall do nothing that may prejudice our position.

Id. § VII(3).

**C.  Summary Judgment and Trial**

On January 4, 2013, the Crow Wing County District Court granted in part and denied in part Kuepers' and the other defendants' motion for summary judgment.  Dougherty Aff. Ex. 2.  The Design Claims were dismissed as well as certain Construction Defect Claims.  Id.  The remaining claims continued to trial.  James River informed Kuepers that it would continue to provide a defense to the action pending and through any appeal of the summary judgment order.  Id. Ex. 8.

In December 2013, a jury trial was held on the Association's remaining Construction Defect Claims, and on December 18, 2013, the jury returned a verdict against Kuepers.  Id. Ex. 13.  On February 10, 2014, the Crow Wing County District Court entered judgment against Kuepers in the amount of $2,147,000.  Id. Ex. 15.  Kuepers was given until February 21, 2014 to post a supersedeas bond of $2,147,000 to stay execution of the judgment while an appeal was

pending. Id.

Kuepers requested State Auto post the bond amount, but State Auto refused. Kuepers Decl. ¶ 6. Kuepers then retained Christopher Yetka of Barnes & Thornburg LLP as independent counsel to assist with issues related to insurance coverage. Id. ¶ 7. On June 4, 2014, Yetka wrote James River's counsel to inform James River that the Association was planning to appeal dismissal of the Design Defect Claims.[2] Tarasek Decl. [Docket No. 75] Ex. D. Yetka demanded that James River post the supersedeas bond. Id.

On June 19, 2014, counsel for James River responded to Yetka and stated that under the Policy, James River had "no obligation to pay for the cost (premium) of an appeal/supersedeas bond or to apply for or furnish such a bond when – as here – the judgment entered against the insured does not include covered damages." Id. Ex. F. The letter continued that:

> if Kuepers chooses to post an appeal bond, James River will agree to reimburse Kuepers for the reasonable premium for such a bond if Kuepers requests that James River do so. However, James River will not apply for or furnish an appeal/supersedeas bond and James River will not agree to collateralize or otherwise be responsible for indemnification of any kind. It will be Kuepers' obligation, and not James River's obligation, to procure an appeal/supersedeas bond based upon Kuepers' own collateral/credit.

Id.

**D. Miller-Shugart Agreements**

On July 28, 2014, Kuepers and the Association signed a Miller-Shugart agreement. Dougherty Aff. Ex. 28 ("State Auto Miller-Shugart Agreement"). The State Auto Miller-

---

[2] Yetka's June 4, 2014 letter was delivered after the February 21, 2014 deadline set by the Crow Wing County court for execution of the judgment. The record is not clear why, as of June 4, 2014, the judgment had not been executed.

Shugart Agreement stipulated to judgment against Kuepers in the amount of $2,940,875.15,[3] which the Association agreed it would only collect from State Auto and any other commercial general liability insurers. Id.

Also on July 28, 2014, Kuepers and the Association entered into a Loan Receipt Agreement. Id. Under this agreement, Kuepers agreed to hire the law firm of Hammargren & Meyer—the law firm that was representing the Association in its claims against Kuepers. Id. Kuepers agreed to allow Hammargren & Meyer to pursue claims against State Auto and attorney Michael Barrett and his law firm, Cousineau McGuire Chartered—the attorney and law firm State Auto selected to defend Kuepers against the Construction Defect Claims. Id. The Association agreed to loan Kuepers the necessary retainer fee for Hammargren & Meyer to pursue these claims provided that any financial recovery would be first allocated to repayment of the loan, second to cover the Association's damages, third to cover Kuepers' deductible, and last into a fund administered by the Association to cover future expenses to the townhomes that were necessitated by Kuepers' actions. Id.

On August 4, 2014, the Association and Kuepers requested the Crow Wing County District Court approve the State Auto Miller-Shugart Agreement. Id. Ex. 31. On August 7, 2014, State Auto commenced a declaratory judgment action in Minnesota state court against the Association and Kuepers, seeking an order declaring that the State Auto Miller-Shugart Agreement is unenforceable and uncollectable. Id. Ex. 32. On August 11, 2014, the Crow Wing

---

[3] After trial, the Crow Wing County court awarded the Association $132,487.82 in costs and disbursements, a reduced amount from the $757,875.15 requested. Tarasek Decl. Ex. C. The stipulated judgment in the State Auto Miller-Shugart Agreement included the full costs and disbursements the Association requested. Dougherty Aff. Ex. 28.

County District Court entered the stipulated judgment provided in the State Auto Miller-Shugart Agreement. Id. Ex. 31.

On August 22, 2014, the Association filed a notice of appeal, seeking to reinstate the Design Defect Claims against Kuepers that were previously dismissed at summary judgment. Id. Ex. 35. On August 28, 2014, Kuepers and the Association executed a second Miller-Shugart Agreement. Id. Ex. 38 ("James River Miller-Shugart Agreement" or the "Agreement"). In the James River Miller-Shugart Agreement, Kuepers stipulated to a $2,000,000 judgment on the Design Defect Claims in exchange for the Association's commitment that it would seek recovery of the judgment solely against James River and other professional liability insurers, not against Kuepers. Id. On August 29, 2014, the James River Miller-Shugart Agreement was sent to James River. Id. James River avers this is the first time they received notice that a Miller-Shugart settlement on the Design Defect Claims was even being contemplated. Wise Aff. [Docket No. 68] ¶ 6. On September 9, 2014, the Association withdrew its notice of appeal. Dougherty Aff. Ex. 39.

On September 11, 2014, James River commenced this action seeking a ruling that the James River Miller-Shugart Agreement is collusive, unreasonable, and unenforceable. Compl. [Docket No. 1]. Kuepers filed counterclaims, seeking a declaratory judgment that James River breached the Policy and that the James River Miller-Shugart Agreement is reasonable and enforceable.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall

6

be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (quotation marks omitted).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. Id. However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).

**B. Enforceability of the James River Miller-Shugart Agreement**

"When an insurance carrier denies coverage for a liability claim brought by its insured, the insured and plaintiff may agree to entry of judgment against the insured on the condition that the judgment is collectible only from the insurer." PETCO Animal Supplies Stores, Inc. v. Ins. Co. of N. Am., No. 10-682, 2012 WL 2681415, at *4 (D. Minn. June 4, 2012) (citing Miller v. Shugart, 316 N.W.2d 729, 734 (Minn. 1982)). In general, a Miller-Shugart settlement is enforceable against the insurer if:

    1) The insurer has denied all obligations to pay damages on behalf of the insured;

    2) The insurer (if it is not deemed to have waived notice) has received notice of the settlement and an "opportunity" to participate;

      3) The insured is left without coverage by any other insurer to pay the claimed damages;

      4) The settlement amount is later deemed to be reasonable;

      5) The insured could have liability to the claimant;

      6) The settlement was not the product of fraud or collusion; and

      7) Coverage is ultimately determined to exist for the claim that became a judgment.

Id. (citation omitted).

James River presents four arguments why the James River Miller-Shugart Agreement is unenforceable: 1) James River did not neglect its duty to defend Kuepers and was under no obligation to post the supersedeas bond, Kuepers breached the cooperation clause of the Policy by entering into the Agreement while James River was still providing a defense; 2) James River was not given notice prior to the execution of the Agreement; 3) the $2,000,000 stipulated judgment is not reasonable; and 4) the Agreement is the product of collusion.

**1. James River's Duty to Defend and Obligation to Post the Supersedeas Bond**

James River argues that because it agreed to provide a defense to Kuepers under a reservation of rights, a defense that continued even after the Design Defect Claims—the only claims the Policy covered—were dismissed, James River never denied all coverage and Kuepers' execution of the James River Miller-Shugart Agreement breached the Policy's cooperation clause.  Defendants respond that James River's failure to post the supersedeas bond upon Kuepers' demand was a material breach of the Policy, which voided Kuepers' cooperation obligation.  This dispute turns on whether the Policy obligated James River to post the supersedeas bond on Kuepers' behalf.

Because jurisdiction in this action is based on diversity, Minnesota law controls the resolution of this controversy. Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999). In Minnesota, "[p]rovisions in an insurance policy are to be interpreted according to both 'plain, ordinary sense' and 'what a reasonable person in the position of the insured would have understood the words to mean.'" Farmers Home Mut. Ins. Co. v. Lill, 332 N.W.2d 635, 637 (Minn. 1983) (quoting Canadian Universal Ins. Co. v. Fire Watch, Inc., 258 N.W.2d 570, 572 (Minn. 1977)). Unambiguous contract language is given its plain and ordinary meaning. Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998) (citing Bobich v. Oja, 104 N.W.2d 19, 24 (Minn. 1960)). "[A] policy provision is ambiguous if it can reasonably be given more than one meaning on the basis of its language alone." In re SRC Holding Corp., 545 F.3d 661, 666 (8th Cir. 2008) (citing Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co., 551 N.W.2d 224, 227 (Minn. 1996)).

The Policy provides that James River will pay "Claims Expenses" on behalf of Kuepers. Policy § I(1)(a). "Claims Expenses" are defined as:

> reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "Claim", including the cost of appeal bonds, however, we shall not be obligated to apply for or furnish appeal bonds on your behalf.

Id. § II(C)(2). James River argues that its refusal to post the supersedeas bond did not vitiate the Policy because the plain language of the Policy unambiguously provides that James River was not obligated to apply for or furnish the bond. This is the same position that James River took on June 19, 2014, when its counsel responded to Kuepers' demand that James River "post the bond necessary to protect Kuepers during the pendency of the appeal." Tarasek Decl. Ex. D.

Defendants have not provided any direct authority to support its position that the Policy

9

language obligated James River to post the bond. Instead, Defendants cite authority for the broad proposition that an insurer's obligation to defend continues through appeal. See, e.g., Cathay Mortuary (Wah Sang) Inc. v. Un. Pac. Ins. Co., 582 F. Supp. 650 (N.D. Cal. 1984). James River, however, never took the position that its duty to defend was extinguished once the trial in Crow Wing County concluded. To the contrary, James River instructed trial counsel to "participate in post-trial motions and continue to represent the insured through appeal." Dougherty Aff. Ex. 16. The record reflects that James River did continue its representation of Kuepers after the Design Claims were dismissed, and after the jury returned its verdict.

Relying on Charter Oak Insurance Co. v. Maglio Fresh Food, Defendants also argue that the definition of the "cost" of a bond is subjective and may vary depending upon the insured's financial health. 45 F. Supp. 3d 461 (E.D. Penn. 2014). In that case, the court concluded "that, for a financially weak company like [the insured], the 'cost' of the bond would include, assuming the other requisites of the insurance policy were met, the full amount of the supersedeas bond necessary for [the insured] to take an appeal." Id. at 474. Problematic for Defendants' position is that, unlike the Policy here, the policy at issue in Charter Oak did not distinguish between "cost" and "furnish," referring only to the insurer's obligation to pay the "cost" of a bond. Id. at 473.[4]

The distinction between "cost" and "furnish" in this context has been explicitly

---

[4] Defendants argue that James River's offer to reimburse rather than post the supersedeas bond demonstrates that James River did not provide a meaningful defense. See Reichert v. Cont'l Ins. Co., 290 So.2d 732 (La. App. 1974). While Reichert does state that an insured is obligated to provide a meaningful defense, the authority cited by Kuepers does not extend this obligation beyond the plain language of the Policy. Stated another way, Kuepers' argument that James River's meaningful defense obligation could only be discharged by posting the supersedeas bond, which is in direct conflict with the express language of the Policy, is incorrect.

recognized. For example, in <u>Graf v. Hospitality Mutual Insurance Co.</u>, a case cited by James River that Defendants do not address, policy language that required the insurer to pay "[t]he cost of bonds to release attachments" but not "to furnish these bonds" was held to require the insurer "to cover the premium and other incidental costs, not to indemnify the bond. There is a clear difference in this provision between the 'cost' of bonds to release attachments and 'bond amounts.'" 956 F. Supp. 2d 337, 343 (D. Mass. 2013); <u>see</u> <u>also</u> 14 Couch on Insurance § 200:46 ("Most insurance policies carry a provision requiring the insurer to pay the premium on appeal bonds without obligating the insurer to actually furnish or obtain such a bond.").

It is also significant that the supersedeas bond would have stayed execution of judgment for damages arising from the jury verdict on the Construction Defect Claims, liabilities that James River did not agree to cover.[5] Blurring the distinction between "cost" and "furnish," and requiring James River to post the supersedeas bond would extend James River's duty to indemnify beyond the reaches of the Policy's coverage, since the posting of a supersedeas bond binds the appellant and its surety to pay the judgment if the appeal is unsuccessful. See <u>Bowen v. Gov't Emps. Ins. Co.</u>, 451 So.2d 1196, 1197–98 (La. Ct. App. 1984) (citing <u>Bordelon v. Safeway Ins. Co.</u>, 398 So.2d 183 (La. Ct. App. 1981)). If James River were to post the bond, in the event of an unsuccessful appeal, James River would be "required to functionally indemnify [Kuepers] by forfeiting the bond for the trial judgment. Requiring insurers to assume a broader duty to defend on this topic, then, may result in an insurer having to indemnify an insured for a claim that the policy does not cover." <u>Charter Oak</u>, 45 F. Supp. 3d. at 476.

---

[5] The James River Policy was for professional liability, which covered the Design Defect Claims that were dismissed on summary judgment; the jury verdict applied to the Construction Defect Claims, which implicated a different insurer, State Auto.

Finally, Defendants argue that James River should have posted the bond and then sought contribution from State Auto. In support, Defendants cite Cargill, Inc. v. Ace American Insurance Co., 784 N.W.2d 341 (Minn. 2010), a case that addressed whether an insurer that provided a defense to its insured had an equitable right to seek contribution for defense costs from any other insurer who also had a duty to defend and whose policy had been triggered. In addition to being factually inapposite because James River and State Auto did not insure against the same risk, Cargill does not require James River to assume an obligation its Policy expressly declined to perform.[6]

James River never denied all coverage of the Association's claim and was prepared to continue with its defense of Kuepers if an appeal was taken. Because James River was not obligated to post the supersedeas bond, it did not breach its duty to defend under the Policy. Kuepers, therefore, breached the Policy's cooperation clause by entering into the Agreement while James River was still providing a defense. See Steen v. Those Underwriters at Lloyds, London Signatory to Policy No. E0100191, 442 N.W.2d 158, 162 (Minn. Ct. App. 1989) ("A breach of the cooperation clause which is material and prejudices the insurer can void coverage.").

### 2. Kuepers Failed to Provide Notice to James River

The enforceability of a Miller-Shugart settlement can also be impaired by the failure of the insured to give notice of the agreement to its insurer prior to its execution. See Corn Plus

---

[6] Defendants also cite Bowen to support their contention that James River should have helped Kuepers arrange for a bond. 451 So.2d at 1198. The language Defendants summon from Bowen, however, took this position when the "bond for the amount of the judgment [is] in excess of the policy limits." Id. This statement in Bowen does not apply to the facts at issue in this case.

Coop. v. Continental Cas. Co., 516 F.3d 674, 680 (8th Cir. 2008) (stating that notice to the insurer is an essential element of a valid Miller-Shugart agreement); Med. Graphics Corp. v. Hartford Fire Ins. Co., 171 F.R.D. 254, 263 (D. Minn. 1997) ("[A] Miller-Shugart settlement is not enforceable against an insurer if the insurer is not provided notice of the agreement."). Since James River did not breach the Policy, Kuepers was required to provide notice to James River that it was negotiating a Miller-Shugart settlement. See Brownsdale Coop. Ass'n v. Home Ins. Co., 473 N.W.2d 339, 341–42 (Minn. Ct. App. 1991) (noting that an insurer's breach of its duty to defend obviated the insured's notice obligation). Defendants argue that Kuepers' communications with counsel at Cousineau McGuire Chartered, the law firm appointed by State Auto to defend Kuepers, satisfies the notice requirement.

To support its argument, Defendants rely on a "Non-Waiver Agreement" entered into by Cousineau McGuire Chartered with Murnane Brandt, defense counsel provided by James River for Kuepers. 2d Tarasek Decl. [Docket No. 82] Ex. A. Citing this agreement, Defendants contend that when Kuepers' independent personal counsel discussed entering into a Miller-Shugart settlement with counsel at Cousineau McGuire Chartered, this constituted notice to James River that Kuepers was contemplating a Miller-Shugart agreement regarding the Design Defect Claims.

Defendants' logic is undercut by the plain language of the Non-Waiver Agreement, a contract that permitted Cousineau McGuire Chartered and Murnane Brandt to share each firm's work product and communications without waiving attorney-client and work-product privilege. Although the Non-Waiver Agreement references a "de facto joint defense agreement," in no way does the Non-Waiver Agreement provide that communications made to one firm would be

relayed to the other.[7]  In fact, the opposite is true.  The Non-Wavier Agreement provides that the two firms "were permitted to share attorney-client privileged communications" and that "the de facto joint defense agreement also permitted, but did not require, attorneys . . . to share their respective work product."  Id. (emphases added).  Defendants' argument that the Non-Waiver Agreement acts to convey notice to James River stretches the meaning of the document beyond its breaking point.

### 3.  Reasonableness of the James River Miller-Shugart Agreement

Although the James River Miller-Shugart Agreement is unenforceable for the reasons expressed above, a brief discussion on the reasonableness of the Agreement is merited.  Defendants, as the parties seeking the Agreement's enforcement, bear the burden of proving that the Agreement was reasonable, meaning "what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim."  McNicholes v. Subotnik, 12 F.3d 105, 109 (8th Cir. 1993); Jorgensen v. Knutson, 662 N.W.2d 893, 904 (Minn. 2003).

Defendants have not satisfied their burden.  First and foremost, the claims on which Kuepers agreed to accept a $2 million judgment had been dismissed by the Crow Wing County District Court on summary judgment.  Therefore, for Kuepers to be exposed to liability, the Association needed to overturn the District Court's grant of summary judgment at the Minnesota Court of Appeals.  While this Court will not endeavor to surmise the Association's probabilities

---

[7] Kuepers, in its briefing, claims that Cousineau McGuire Chartered and Murnane Brandt "were operating under an express Joint Defense Agreement whereby any communication to either firm constituted a communication to each firm."  Defs.' Mem. Opp'n Pl.'s Mot. Summ. J. [Docket No. 81] at 3 (emphases in original).  In addition to the Non-Waiver Agreement referring to a "de facto joint defense agreement," no "express Joint Defense Agreement" is found in the record.

14

of success on appeal, James River's expert, Thomas J. Radio, a construction litigation attorney with over 30 years experience, opined that the likelihood of reversal was "very low." Dougherty Aff. Ex. 41 at 20.[8]

Assuming that the Association succeeded at the Court of Appeals and its Design Defect Claims were reinstated, the Association next needed to demonstrate that the Design Defect Claims were "different in kind" from the Construction Defect Claims. The Association would also have needed to successfully prevail on res judicata and duplicative recovery concerns. See Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 379 (Minn. 1990) (holding that parallel actions can be maintained, but double recovery for the same harm is not allowed). While it is unnecessary to wade into the merits of either party's position, it is sufficient to note that this is yet another obstacle the Association would have needed to traverse before financial recovery of the Design Defect Claims was available.

Kuepers' agreement to a $2 million judgment when the Association faced such a arduous task of exposing Kuepers to liability raises, at a minimum, legitimate concerns of reasonableness.

## C. Defendants' Motion for Partial Summary Judgment

Defendants' summary judgment motion seeks an order concluding that James River breached the Policy by failing to post the supersedeas bond, as well as upholding the validity of the James River Miller-Shugart Agreement. Because these requests are predicated on a

---

[8] Defendants, in arguing that the expert report of Thomas J. Radio should not be considered, fails to cite authority that adequately supports their position. Rather, Defendants cite appellate authority that states "a district court should not be held to have abused its discretion by excluding such statements." In re Acceptance Ins. Cos. Sec. Litig., 423 F.3d 899, 905 (8th Cir. 2005). Kinder does not mandate the Radio expert report be excluded.

favorable result for Defendants on James River's summary judgment motion, Defendants' Motion for Partial Summary Judgment is denied for the same reasons that James Rivers' Motion for Summary Judgment is granted.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff James River Insurance Company's Motion for Summary Judgment [Docket No. 65] is **GRANTED**.

2.  Defendants The Interlachen Propertyowners Association and Kuepers Construction, Inc.'s Motion for Partial Summary Judgment [Docket No. 71] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

  s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 1, 2016